All right, counsel. Mr. How do you pronounce it? Menterfield? How do you pronounce it? All right. I was afraid I might butcher it, so I didn't want to do that. All right. Thank you, sir. You're on. May it please the court, Robert Mondteifel for the plaintiff in the underlying case, Jose Hernandez. With the court's permission, I will retain five minutes for rebuttal. I think in the first instance, this needs to be said. This is a Fair Labor Standards Act case, and in many regards, the very nature of this case colors the decisions made by the parties in the case and what the outcome should be. Second, I must state what the case is not. This is not a case in which the plaintiff ever filed a bankruptcy claim against Mr. Larry Miller as an individual. Larry Miller as an individual never filed for bankruptcy. Consequently, it would be impossible to file a bankruptcy claim against Larry Miller as an individual. That was never done. Mr. Hernandez did file a bankruptcy claim against Larry Miller Roofing, Inc., the company owned by, at least in part, Mr. Miller and his wife. When the bankruptcy was filed, the underlying case was stayed, and during the pendency of the bankruptcy proceeding, Larry Miller Roofing, Inc.'s bankruptcy went into Chapter 11, and there was a plan instituted. It probably shouldn't have been stayed as to Miller. Sir? It shouldn't have been stayed as to Miller.  It was administratively closed, and I made a mistake there. The case was not stayed so much as it was administratively closed pending the proceedings in the bankruptcy court. Well, that's common, though. Oh, it is? Yes, it is, because the judge wants to find out what the recovery is going to be in the bankruptcy case before proceeding. That is also quite beneficial to the plaintiff in a case of this nature because until you know what the offset or credit is going to be for the claim against the individual, it really doesn't do anybody much good to go forward with the underlying case against the individual until you can put parameters on the liability. So if you win, just jump into that offset point, what happens with the money already recovered? In the bankruptcy case, Your Honor? Yes. That would be an offset. I think that's mentioned in the Santiago case. I didn't understand that. Thank you. What we have, because this is a Fair Labor Standards Act case, is that this is never going to be and could not be a case of derivative liability. We are not piercing the corporate veil. We are not running around trying to find some way because of some skullduggery that Mr. Miller may have done to go around him and get into the assets of the company. Mr. Miller's individual liability, if he is an employer under the law, is established directly to him by the Fair Labor Standards Act. Joint and several independent. Yes. Both joint and several. And that's a good point because in a large part, this case will come down to interpretation of two items. One being a claim. What is a claim as defined in the plan? The claim is any debt or other right to payment from the debtor, whether or not such right is reduced to judgment. An allowed claim is a claim against the debtor for which a proof of claim has been timely filed with the court by the bar date and as to which no objection to the allowance thereof has been filed. We made our claim against the company. No objection was made. That claim went into the plan. Would you agree that if it specifically had said, and we released the non-debtor, Mr. Miller, too, you'd be out of luck? If we had not raised that objection in the underlying case. The bankruptcy court, that is true. So it all comes down to who's the specificity of the release? And then just tell me, do you perceive this to be ambiguous or you say no ambiguity? And if you say no ambiguity and we conclude it's ambiguous, who wins then? In our view, it is not ambiguous in that, since there's no claim ever made against the individual. There could not be a release of such claim. When you look at the definition of debt, an obligation owned by the debtor, which would be the company, a loan, which is the sever liability of the company in our case, and any obligation of debtor in any other person or entity. That would be the joint liability of the company and Mr. Miller if there was such, that the company would be liable to pay if Mr. Miller could not pay in his entirety. Isn't it the case here that the question that we have to decide is a question of plan interpretation, right? That's it. Yes. I'm sorry, Your Honor. And your client voted for the plan. That is correct. And under the terms of the voting, I mean, so he's, so that's why it all comes down to the terms of the plan. Your client consented to the plan. So the whole question comes down to whether the interpretation of the plan that the district court arrived at here was flawed in some way. That is exactly right, Your Honor. So, and that in turn comes down to whether this question, any obligation of the debtor and any other person. Okay, your client is an other person, right? Well, I mean, not your client. His target is an other person. Yes. But that other person would be necessarily Mr. Miller, but that would go to the joint liability under the FLSA. Right. As between Mr. Miller and the company if there was joint liability. Well, it doesn't say joint liability. It says any obligation of the debtor and any other person. That doesn't say joint. It doesn't say several. It just says any obligation of the debtor and any other person. So the question is whether or not it's incorrect to read that as covering this obligation. This is a very common provision. This is not the first rodeo for this provision. That's true, Your Honor. And we have found no instances in which, with the exception of, I believe, the Santiago case where someone has tried to get out of an individual liability. In an FLSA case, we have not found such a case. I haven't found one either, and I look one for an FSLA case. But it is not at all uncommon to have a provision exactly like this in a plan, and the other people who are liable, not under the Fair Labor Standards Act, but under some other theory, and there's lots of theories under which other people. Let me tell you, as you well know, when someone goes into a bankruptcy, of course the first thing that happens is we start looking at our hold card. You know, who else is liable on this thing? So it's not at all uncommon to have a provision like this in a plan and to release independent obligations of other people under other theories. So this is a— Yes, Your Honor. In our view, though, the definition of debt does not include the sever liability of Mr. Miller. That's your argument. I understand your argument. That is exactly where we are because it's not expressly contained in there. The only debt that we have would be that which could flow out of the claim, which is the claim against the company. And the sever liability of Mr. Miller is not addressed in the plan. But we have, for example, director's liability. You know, that's very common in a plan to release the directors who have independent liability for breach of fiduciary obligation or whatever. And, boy, those directors of that debtor, the one thing they want is a provision in that plan that says, and we're also, you know, any other person that's liable on this thing is off the hook. And then it's important whether you voted for it or not, which you did. Right. But as we construe it, if it is improper, if an objection was made to release a non-debtor from an obligation, how in the world could it be proper for a court to produce a plan— It's not improper. To produce a plan that would release a non-debtor from a claim that had not been made in the bankruptcy court because the claim against Mr. Miller individually had never been made in the bankruptcy court. Well, you know, when you're going to go after a director for breach of fiduciary duty, you don't make that claim in the bankruptcy court. You know, you're going to get that somewhere else. But the plan says we release any other person who may be liable. And so this is—it's a common—I mean, I have to say I've seen a lot of these things, and people—I've always been uncomfortable releasing the directors. But it happens all the time. Well, as I understood your brief, you had sort of three layers of argument. One was in a bankruptcy case as to a non-debtor, they can't be released unless they're unusual circumstances. That is correct. It can be under the plan. But under the plan, but you're saying—but as I understood that law as to non-debtors, there had to be great specificity, which would make huge sense. And, you know, Miller could easily have said, or your client, Miller is released. And when they get upheld, they almost always say that. But here, it's—nowhere mentions Miller's release, correct? That's correct. And your second—the third level argument is, and especially in the FLSA context, where it isn't director liability for that company. It's an entirely separate duty. Isn't that what you're saying? Exactly. It's analogous to a truck driver in a truck company. The truck company may be liable for the accident, but the truck driver has a personal, absolute, direct liability to the person involved in the accident. And you see that— It can or can't be compromised in bankruptcy court. It cannot be signed away. But you didn't—the traveler says that wasn't attacked at the time, correct? Correct. So could you address the Applewood decision, if you're familiar with it? Afraid I'm not. You're not? Okay. The travelers, I believe, dealt with a guarantee situation. These are cases in which the liability of the individual flows from the conduct of the company. In an FLSA case, the liability of the individual is established under the statute, and the statute was enacted for the purposes of ensuring that people who worked in America were paid properly under the law. Why didn't you file an objection here? We did not believe that the plan went to the claim against Mr. Miller as we'd never made a claim against Mr. Miller. We were not going to stand in the way of the bankruptcy plan to conclude the plan in order to— Because you were going to get paid under that. Something. Something. But we needed to move the case to be able to conclude the bankruptcy to put finite limits on our damages so that we could go forward with the underlying case against Mr. Miller individually, which we moved to reopen that case, I think, before the second payment was made, when it was clear that the parameters were going to be made. It's undisputed these are wages that weren't paid? The $47,000? That is based upon the Anderson v. Mount Clements Pottery. It's an estimation from the plaintiff because perfect time records were not maintained. The employer did not maintain good time records, and there is some time that the plaintiff claims he was not paid for which no time records were maintained at all. But the minimum would be $47,000? That is our— Undisputed. Yes. Because I'm thinking along the lines of why would he take 30 percent? If it contemplated this really is what he thought he could get ever because there aren't time records even against Mr. Miller, then it would look like this was his best guess at the time. But instead, if he's thinking just give me $14,000 out of the total because I still have somebody else I can go after, it just to me has a different flavor. I understand the argument. But it's not really resolved in the record? It's not, and that's why it's not raised judicatum. The claim against Mr. Miller and the amount of that claim has never been adjudicated anywhere. But the amount of the company's liability has been adjudicated. That is correct, Your Honor. Now, why would Mr. Miller's liability be different than the company's liability? I mean, I thought that was the whole theory of the Fair Labor Standards Act is you go against the company, but you go against an officer for the same amount. During the period of time, simply being an officer may not be enough to make one an employer under the law. Oh, I know. I've been there. Yes, Your Honor. And there may have been periods of time in Mr. Hernandez's employment when Mr. Miller was not engaged in the company sufficient to make him an employer for that period of time. When the employers are jointly, joint employers, they're going to have joint sever liability. Otherwise, you may have sever liability if you have an employer who's responsible for a period of time. So your theory is that the amount involved here somehow is different? I mean, what the company owed and what your defendant owed is different? Well, what Mr. Miller might owe based upon what my plaintiff's claim is, yes, Your Honor. It could be what the facts are that come out at trial because . . . I've never seen that. That's not . . . Well, I've seen that in some cases where you have multiple employers, managers of companies that have worked in a restaurant, say, for two or three years. Yeah, but that's a different . . . In a sense, it's a different claim. In this case, we have every reason to believe that Mr. Miller would be congruent because he was the owner of the company and managed it on a day-to-day basis. So it's going to be the same dollar amount of the claim as already been adjudicated in the bankruptcy. I don't know the exact amount of the claim. Well, I guess the claim was already accepted. So there's a claim, and it's been accepted, and X amount of dollars, 40 percent or whatever it was, was paid on it. And now you want to get the other 60 percent. And the question was, we can recover the balance of 70 percent. That's exactly the kind of situation in which the bankruptcy, which the plan most often is given effect, say, I think. And we looked at the Santiago case to say, in a case like that, where the individual liability has been released, that that's simply not proper because it goes outside the bounds of what the court is able to do since the only debtor before it is the company. I don't understand why you shouldn't have been made to object to this in the bankruptcy case itself. Because it looks to me as if you can read that language and any obligation of the debtor and any other person, i.e., the CEO, that you can make the claim that that released the CEO. And if you didn't want that to happen and you still wanted to vote for the plan, it was a good time to step up and object. But we read that because it's conjunctive, the debtor and any other person, comma. It doesn't say the debtor and any other person. It just says the debtor and the debtor and any other person. I can understand why the company would want its joint liability released because it's got several liability and then it's got joint and several liability. Under our case, it probably has other situations with other claims. But for us, this language is something we didn't take exception to because we'd never filed a claim against Mr. Miller. We did not believe that the plan would operate to preclude our claim against him as an individual. Again, I may be oversimplifying, but if it does come down to who has the burden to be specific as to the claim and the people released. I mean, this language to me is very nonspecific. It could be construed either way. Therefore, if that's the case, and I know you disagree with that and they would disagree also, what consequence in the law? Is there a law that requires specificity as to release of third parties that you can tell me? I'll have the answer to that off the top of my head, Your Honor. My position would be that the drafter would be. Yeah. Any further questions? All right. Thank you, sir. I reserve the balance of my time. I reserve your rebuttal time. Mr. Feldman? May it please the Court. My name is Ryan Feldman. I'm with the law firm Gordon and Reese, representing the appellee Larry Miller. I'd like to address the question that Judge Higginson just asked about whose burden it is on specificity, and I think to answer that, it depends under what rubric you're looking at, whether you're looking at the affirmative defense of release or whether you're looking at the doctrine of res judicata. And in the underlying court, we raised both affirmative defenses. The district court granted summary judgment on the release affirmative defense and didn't reach res judicata. Under the standards of release, it's contract interpretation. It's federal common law. You look at release as a contract. You use the standard and traditional tools of contract interpretation to see whether or not the document released the entity who's claiming is released. That's what you do, and it's that simple. And under that rubric, I believe that the appellant's interpretation is tortured and violates those traditional rules. You go with plain and ordinary meaning. You go with a specific provision trumps over a general. You go with the fact that you do not interpret a contract to render any language as meaningless surplusage. And that's what I believe their position requires. Also, if you look at the definition of— But in res judicata, the Applewood case would require more, am I right? Actually, in res judicata, I think that res judicata analysis still favors the appellee. But the specificity has to be more or not? It does. It does. And I will concede that, Your Honor, because you have the Republic v. Shove case, the 1987 case of this court. Then you have the Applewood, which I believe is 2000. And there's a big difference because Applewood, I believe the facts of that case was there was a single sentence. It was a single sentence release that was very general, and that's all there was. But the Applewood case, I believe, was a res judicata case. It was going under the analysis of res judicata. Yes. There have been some recent district court decisions. I think one is called the Northern District of Texas decision called NRA Wool Growers. It has a pretty good analysis of the difference between a procedural posture of you have a release of a non-debtor party in a confirmation plan, and there's two scenarios that can happen. One is that release is objected to. It didn't happen here. The other is it's consensual because it wasn't objected to. Very different standards. Is there anything in the record to show that the parties at the time of him getting 30 percent, everyone sort of knew it was Miller too? Is there anything there, or is there we just? There's nothing in the record, but I'll tell you why. The reason is how things developed after the case was originally filed. The FLSA case, which was against Larry Miller Roofing, Inc. and Larry Miller from the get-go, was filed in November of 2012. I believe that the bankruptcy was filed in February of 2013, if I'm not mistaken. But before the bankruptcy was filed, a deposition was taken of Larry Miller, and I know that there are sites to the deposition in the record that was cited in my summary judgment brief. And in the deposition, it clearly establishes that he didn't contest I'm an officer of the company. He didn't contest any of the factors that would apply to determine whether or not Larry Miller individually is an employer. I do not know off the top of my head whether there was anything in the deposition that established one way or the other whether that $47,000 figure that was listed in the proof of claim was accurate. In fact, so we cannot say that was undisputed. In fact, I think we have to determine it was disputed. It just never got that far in the trial court. And instead what you have is Larry Miller Roofing, Inc. files its bankruptcy for a multitude of reasons. The appellant files a proof of claim, and the proof of claim form submitted says $47,698, I believe. And then it attaches, it just simply attached the complaint in the district court. Now, the complaint in the district court was pretty short and sweet. It says this is an FLSA case, that he was contending that this amount of money was owed to him. I don't know whether the complaint even specified that $47,000 figure. But what's interesting is that in the complaint it says that what was being sought was damages for the joint and several liability of Larry Miller Roofing, Inc. and Larry Miller. So then you look at, you say, okay, you've got this proof of claim. You have the lawsuit attached to it. That's Mr. Hernandez's claim. And then you look at, well, what does the plan say about what a claim is? And you first look through the definition of claim, which in turn has the capital D definition of debt. And then you get to the sentence that Mr. Montauful has already addressed. But I believe that the interpretation that the appellant is offering is just it's unfounded. It goes completely against the plain language. It says any obligation which is owed by the debtor alone. Okay. That's one scenario. And then you've got the other scenario, like here. And any obligation of debtor and any other person to any entity. It doesn't say any joint and several obligation. It doesn't say any derivative obligation. But it's conjunctive. That's right. It's conjunctive. As from the debtor. And the debtor only is the company. That's right. So the debtor alone, the company. Then you look at the second type of debt, the obligation of debtor and any other person. It is a conjunctive obligation. And here's why. Because you've got a complaint filed on the FLSA against two different defendants. One is the corporate entity. The other is the corporate entity's officer. Under the FLSA, they can both be liable for back pay. But it's not separate back pay. It's not as if the company has got one back pay obligation and Larry Miller has another. It's the same obligation. But if a company doesn't take bankruptcy or a company does go into bankruptcy and there is no stay under, what's the case, Zale and Reliant Energy? I'm familiar with Zale. Zale, our case. Matter of Zale. Okay. Then Miller would be on the hook for the full amount. Well, here's what's interesting on that point. The appellant's own conduct sort of belies the arguments that are being presented to this court. Because baseline rule, the automatic stay only applies to the debtor. Right? Right. So why didn't Mr. Hernandez pursue his claim? And that was addressed a little bit at the beginning of his argument. But he could have pursued his claim against Larry Miller. He could have said, well, look, only Larry Miller Roofing Inc. has filed for bankruptcy. Larry Miller is an individual. And if I can establish that Larry Miller meets that factor test to be an employer, then I can see what I can recover against Larry Miller. But that's not what the appellant did. Instead, the suggestion of bankruptcy was filed in the district court. It was administratively stayed. What's interesting is no motion was filed to lift a stay until after Mr. Hernandez received his $14,000. And what's funny is that that conduct does indicate that Mr. Hernandez understood the effects of the plan. Because the section that I was . . . Well, I guess it was discussed earlier, that sort of comment. It always happens the administrative sort of hold it in abeyance. I'm not sure whether that's true. I honestly don't know. But what I do know . . . A lot depends on extraneous factors like how bad the bankruptcy court's docket is or the district court's. I mean there's a whole lot of reasons why these cases get stayed sort of later as a response of a judge later. So . . . You know, and I think back to what we were discussing, which is Applewood. I don't think this is Applewood. I think this is closer to Shove under the res judicata analysis. And the reason is this isn't a confirmed plan that has a single sentence that someone's trying to rely on. It's much more than that. It's all over the plan. It's very, very clear that Larry Miller is being released. Now, yes, I must concede the name Larry Miller doesn't pop up in the plan. And when I look at release law in these non-debtor circumstances, they get upheld when it says specifically the big-time director or employer who wants out is named. It would be front and center negotiations, front and center in the plan. So just here you've got the roofer who gets $14,000 on $50,000 or $47,000, and in that entire process we never get the name Miller put in there as a non-debtor releasing. With all due respect, I don't believe that is the law. I don't think the law is under the release analysis that you have to have the director specifically named . . . Well, the non-debtor is what I'm . . . The non-debtor. You have to have the non-debtor specifically named. I think what the law is, is you have the Republic v. Shove case, which was a specific release of a guarantor. And that established law in this jurisdiction as to certain issues. You have Applewood, which is a not specific to a guarantor, a single sentence, very broad release. I can't quote it verbatim, but it was just anyone and everyone. And then I think this situation isn't in line with Applewood. I think it is sufficiently specific. But as interpreted by the district court, it is. He said anyone. Right, but the district court is looking at 11.5 of the plan. And 11.5 has that language that says, Once the plan payments are completed, claims asserted against the debtor shall be deemed paid in full, including the release of rights to enforce or collect such claims against non-debtor parties. Now that is very broad. It is very broad, standing alone. But that's not the only provision in the issue. There are others. For instance, you get to section 11.10. The debtor, the reorganized debtor, the officers and directors of the debtor, and the shareholders, shall be discharged and released from any liability for claims and debts. Capital D debts as defined by the plan. I think that's an important provision as well. And I think that's what makes this different from Applewood. The other thing is you've got to look at the context. This isn't a company with 20 officers and directors and thousands of employees. And at the time the bankruptcy was filed, Mr. Hernandez had already obtained a deposition of Larry Miller where he had already said there are only two officers of this company, me and my wife. My wife owns 51% of the equity. I own the other 49%. So that's the case we have here. There's no ambiguity as to who the officers are. They're very well known. And then I think, Judge King, to your point, there is no dispute that the appellant could have objected. Never did. This should have been, this whole issue should have been the subject of an objection in the bankruptcy court. But, no, he didn't want to do that because the answer to that would have been clear. Okay. I mean, he would have lost on that point. So, and part of the problem here, too, is that I looked at the disclosure statement. I mean, this thing is a deal on the cheap. This is not, you know, this is not a huge disclosure statement. That's right, Your Honor. This is not an absolute on the cheap deal. But this should have been the subject of an objection in the bankruptcy court, which would have clarified, as in the other case, which cases was it that sought clarification from the bankruptcy court? There are multiple cases. But that's, you go into the bankruptcy court and you say, okay, we want clarification on this. That's right. That's what should have happened here. It didn't happen. And I suspect the plaintiff didn't want it to happen because the answer from the bankruptcy court would have been clear. So now we're at the Fifth Circuit. There are a couple of other things to point out with respect to the procedural posture of this case. I believe the question was asked, you know, what were the terms of the plan with respect to receiving 30 percent? What's interesting is the plan, I think, had six classes, a class 1 through 5 and a class 5A. Yeah, he elected 5A treatment. And 5A was the class that you had to specifically elect and cast a ballot. And I believe that the way the plan worked is it said, if you want class 5A, here's the upside. You get your money quicker. You get your money in two payments, but you get 30 percent of your claim. And he affirmatively opted for that. That's right. And if you do not elect class 5A treatment, I believe he would have been in class 5. And I can't recall off the top of my head whether he would have received 100 percent. But it was a greater percentage but over a longer period of time, I believe over 60 months. So that was a decision made by the appellant in the bankruptcy court. I want class 5A treatment. The other thing is— Why isn't it just as logical as he's thinking I want $14,000 from the company now? I've got Miller. Right. And he's still got his lawsuit. And he just looks at it. Miller's not released. Law favors specificity and release. He thinks, okay, I may recover the $20,000 more I'm owed, which no one's denying I'm owed. I did the roofing jobs. My answer to that is you can't and you should not look to the party's subjective intent on what they're thinking. But either way, so we can't infer that, oh, he's sitting in silence. But what you can infer, and, in fact, I don't think you even need to infer. I think just read the plan, which is, as Judge King mentioned, this is not a long plan. All of these provisions are bold. They're conspicuous. They're right there in front of you. And they have language saying the debtor, the reorganized debtor, the officers and the directors of the debtor and the shareholders shall be discharged and released from any liability. The other thing is, going back to the contractual analysis that you do for release, again, you should not interpret a confirmed bankruptcy plan any differently than you would confirm a contract. Even as to FSLA claims? That's right. What's your case for that? My case is that, permit me a moment. You're supporting authority for that. Why wouldn't you interpret it differently in the context of FSLA? Well, first of all, I don't believe either side of this dispute found a single case that is an FLSA claim that is filed against a corporate debtor and individual officer. I mean filed against a corporation, filed against an individual officer. A corporation files bankruptcy. That same plaintiff files the proof of claim in the bankruptcy. Then the confirmed plan has the release language that we have here. The plaintiff doesn't object to it in the bankruptcy court, then goes back to the district court. That's the procedural posture of this case, and neither side has found a case on all fours with that. And I'm not surprised because it's an unusual situation. And so my best case is the fact that there is no case out there I could find at least saying, no, you look at FLSA claims differently under this fact pattern. You don't. It's not special in that sense. And, you know, there's a lot of the opponent's brief that addresses the fact that Mr. Miller can be independently liable under the FLSA. That's not contested. That's absolutely true. There's all kinds of claims in bankruptcy where directors or officers have individual liability. That's right. And they use provisions like this to get them releases. And I needed to come back in and ask the bankruptcy court, now wait a minute, you know, I want to proceed against Miller personally. And this may waive it, and I want that clarified. But no. Right. Instead he votes for the plan and makes his claim under Section 5A, which specifically says this is it. That's right. You know, something else I'd like to address is the res judicata analysis. Again, the district court didn't reach it. But as you know, you can affirm a summary judgment for any reason supported by the record and the law. The release analysis, because he not only didn't object to the plan but affirmatively accepted and voted for it, you look at it as a contract. Because it is a contract as between the appellant and the debtor. And you can have third-party beneficiaries of contract. You can have parties released in a contract between Party A and Party B can release a Party C, in this case Larry Miller. That's clear. Now, on res judicata, I believe that res judicata does apply to this case. You look at the four elements of res judicata, first being the identity of the parties. Now, there's case law in this jurisdiction that makes it clear that even though Larry Miller was not the debtor, the fact that he is a party aligned in interest with the debtor, that he is the debtor's officer, and the fact that his interests are adequately represented in the bankruptcy makes him treated as a party in the bankruptcy case. And I believe those cases are the Eubanks v. FDIC case, 977 Federal 2nd 166. And there's a district court case out of the Northern District of Texas, I think, called In Re ZG Gathering. So it makes it clear that, yes, Larry Miller individually was not a party to the bankruptcy, but that for the res judicata analysis, he's treated as if he is one because he's an equity security holder, he's an officer of the company, his interests are represented. So that's the first element of res judicata. Getting to the second, prior judgment by a court of competent jurisdiction, the relevant law here is because the appellant did not object to the confirmed plan, whether or not it was within the jurisdiction of a bankruptcy court to allow a release of a non-debtor party can't be collaterally attacked. And the district court mentioned that in its order of granting summary judgment, and that is correct. Because to say this language can't be enforceable because the bankruptcy code doesn't allow it, the proper venue for that is objecting to the confirmed plan and appealing the confirmed plan to the district court and possibly this court, but it has to be on a direct appeal. It can't be in a separate district court FLSA case on summary judgment. That's procedurally improper. So it is a prior judgment by a court of competent jurisdiction. Third element, was it a final judgment? Case law is abundantly clear that confirmed plans are final judgments. And then finally, the fourth element, whether it's the same cause of action. And this circuit uses the restatement test, the same nucleus of operative facts under the transactional test. And I don't think there can be any question. It's the same operative facts because it's the same claim. It's one claim for alleged back pay owed against two defendants. But the operative facts of the claim are identical. It's just all that the appellant has to establish in the district court is, is Mr. Miller a statutory employer? That's the only separate analysis. In fact, there wasn't a dispute in this case on that issue. Did you cite Espinoza, the Supreme Court opinion? I did not, Your Honor. Well, Espinoza, Justice Thomas, he's talking about Rule 60b-4, strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute. This is a bankruptcy case. Whereas here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60b-4 relief. We thus agree with the Court of Appeals that the bankruptcy court's confirmation order is not void. That was a challenge, saying the confirmation order was. But that language about, if you're going to have a problem, you better go in that bankruptcy court and object to it. And here, he didn't object, he voted for it. Yes, Your Honor. I believe that principle is also clear in the U.S. Supreme Court case, Travelers v. Bailey. Yeah. Okay. Thank you, Your Honors. Mr. Butler. Your Honors, we're still back to the definition of debt. It's a debt owed by the debtor or a debt owed by the debtor and some other person, not a debt owed by the debtor or some other person. Our claim, as defined, is against only the company, and the debt, as defined, goes to the company. We didn't object to the plan because the plan was for the benefit of the company to get the company through bankruptcy. When the company's through bankruptcy, then we can pick up the litigation in the district court and move the case along, which would be to the benefit of the district court and everyone involved. There was no benefit to us, necessarily, to object to a plan that we didn't think affected our case against Larry Miller as an individual. As to res judicata, our position, of course, is, in the first instance, that there was no jurisdiction because releasing a non-debtor for a claim that wasn't made is outside the bounds of the jurisdiction of the court. Well, more appropriately, we're outside the power. Our position has been that the court had the jurisdiction, but not necessarily the power, to issue an order of that type. And our argument was one of interpretation of the contract in conjunction with the bankruptcy code to only allow the plan, the contract in this case, to be interpreted in the light of what was possible for the court to do. Not objecting to the plan, again, allowed us to move the case along quicker and get to trial, which is where we would pick up the balance in the claim that we still retained against Larry Miller and our position that we still retained against him as an individual to this very day. With regard to res judicata, the case was not adjudicated as to Mr. Miller's individual liability in the underlying bankruptcy case. That part of this case has never been tried. The claims against him have never been tried. The claims that were made in the district court but were not raised in the bankruptcy case have never been tried. There's been no final judgment, and that case remains alive, and that is our position with regard to this case. I think in the analysis, what we have is really more in the line of the Bousher case, where the defendant went through bankruptcy, or the company went through bankruptcy, and the case remained alive as to the individual defendants, and the court in that case determined that the individuals were not debtors and that the debtor was not a defendant, and that is the position that we're in in this particular case. Mr. Miller, as an individual, was not a debtor in the underlying case. Our claims against that debtor are defined by the debtor against which we brought them. The several claims against Mr. Miller individually, which are not addressed by name with regard to him in the plan, remain, and we take no exception to the fact that the company itself would be released by the plan and that that company has made all the payments to our client under the plan that were required by the plan. That's why we waited. You wouldn't know that the plan was going to be completed as to you until the payments were actually made, and therefore, you would have no constraint on the amount of the amount. You'd have no definite finding of the amount of offset to be used in the trial court when you proceeded against Mr. Miller. So as to travelers in Espinoza, your view is, well, yes, we would have objected if we had any idea they were going to say this applied to a non-debtor. Yes, Your Honor. If we believed that the court had the power to do that. Well, one, did they have the power, but in unusual circumstances, they can if it's specific enough. So again, it comes back, I see this as maybe you each say the language is clear. If I see it as ambiguous, I'm back to do we look for parole evidence? Was there any discussion ever in these negotiations that Miller was getting off to? None of which I'm aware of. That is exactly the issue that should have been raised in the bankruptcy court. Exactly. I understand. No reason to be here at this stage in this deal arguing about this in my humble view. I understand your view, Your Honor. We obviously have a contrary position. Yes, I recognize that. Thank you very much for the court's time. You've got 23 seconds. 23 seconds. Do I have a question, Your Honor? I've got a question. Yes, sir. This guy's been fighting this for how much? What, $20,000? Is that what's still owed to him? The balance due would be 70%, about 28, 70% of roughly $47,000. Okay. The other thing, if you finally get to a finding of liability in a district court case, at that point, then we'd make application for fees. Right. Which would be over and above that. And that if you ever get . . . You'll get them in the bankruptcy court? No, Your Honor. Okay. All right. I think we've got it. Thank you, counsel. Thank you. We'll take up cases four and five. The panel will stand in a short recess. All rise.